IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AFY, INC., f/k/a Ainsworth Feed Yards Company, Inc. | ) ) ) ) ) | CASE NO. 10-40875<br><br>Chapter 11 |
| Debtor. | | |

# DECLARATION OF PAT CHOHON

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. BK 10-40275 |
| | ) | |
| ROBERT A. SEARS, Debtor | ) | (Chapter 11) |
| | ) | |
| IN RE: | ) | CASE NO. BK 10-40277 |
| | ) | |
| KORLEY B. SEARS, Debtor | ) | (Chapter 11) |

### DECLARATION OF PAT CHOHON

COMES NOW, Pat Chohon, who states as follows:

1. I am a licensed real estate broker in the State of Nebraska. I began selling agricultural real estate in 1991. I have been involved in selling and leasing agricultural real estate since that time. I make this declaration based on my personal knowledge of the facts set forth herein.

2. I am the owner of TARPP, P.C. dba Waldo Realty ("Waldo Realty"). Waldo Realty sold all Brown County real property (the "Property") owned by Korley B. Sears ("Korley"), Robert A. Sears ("Robert"), and AFY, Inc. at public auction on February 9, 2010.

3. In late November, 2009, I had discussions with Korley regarding the possibility of selling the Property. In early December, 2009, Robert and Korley signed a Farm Service Agency certificate of identity authorizing Waldo Realty to obtain information from the Brown County FSA office. In December, 2009, I obtained personal and real estate tax receipts from the Brown County Courthouse, farmground and irrigation equipment information, and other information in anticipation of a potential sale.

4. On about December 16, 2009, Robert and Korley, on behalf of the sellers, signed a listing agreement with Waldo Realty for the sale of the Property. Shortly thereafter, we (Waldo Realty) began constructing sales brochures and planning the advertising campaign.

5. During the week of December 23, 2009, public advertising began with radio and published advertisements, which continued until the sale dates. States targeted included, but were not limited to (subject to subscribers), Nebraska, Kansas, Missouri, Oklahoma, Texas, Colorado, North Dakota, South Dakota, Minnesota, Iowa, Illinois, Utah, New Mexico, Georgia, and Florida. Waldo Realty sent auction notices to 44 Farm Credit offices, 5 attorneys, 7 livestock markets, 16 banks, 259 feed yards, and 120 potential buyer callings. We spent in excess of $15,000 in advertising and marketing expenses, and incurred approximately $40,000 in attorney's fees in tailoring purchase agreements to the seller's specifications and preparing for closing.

6. At the auction on February 9, 2010, 31 potential buyers signed in for bid numbers, including 4 major cattle feeders. Two additional potential feedlot buyers had contact and the ability to bid on the day of sale via telephone. Over 150 individuals, a good portion of whom are presumed to have been potential buyers, were at the sale. Prior to the sale, I showed the feedlot to representatives of 5 Rivers Feedlot and Circle 5 Feeders. Rolling Stone, Cactus Feeders, and West Central Land also showed interest but were already familiar with the feedlot. All of these entities are major cattle feeders. Paul Engler of Cactus Feeders, a recent donor of $20 million to the University of Nebraska-Lincoln, was represented by Norris Anderson at the sale. Norman Timmerman was also present at the sale.

7. It is my professional opinion that we had adequate time to advertise and bring the potential bidders to the sale and did so. I do not believe that the Property would bring higher prices if resold.

8. It is my professional opinion that the sales made were on financially beneficial terms at fair market value prices. I am aware of the general consensus that prices were appropriate for the Property. I am aware that the sale prices met the expectations of the lenders

for the sellers. I am not aware of a single creditor of the debtors who wishes the Property to be resold.

9. I have reviewed the Declaration of Robert Sears regarding the value of the Brown County Property. The statement that the Brown County Assessor values the irrigated farmground at $3,700.00 per acre is not true. In fact, the per acre assessed values appear to generally range from $1,000 per acre to $1,700 per acre, based on total acres (per irrigated acre would be only slightly higher).

10. As an example, the assessed value for Tract 7 (after adjustment for the county's agricultural land ratio of .72) is $250,102.78 ($1,605.28 per acre). The Tract 7 sale price was $482,980 ($3,100.00 per acre). The assessor records, due to size, were not attached, but are available upon request. Upon my review of those records, the other tracts appear to be similarly assessed well below the sale prices.

11. In the past year, I sold farmground in Brown County, for a different seller, for a sale price of $3,100 per acre. I believe this sale to be at or near the top of sales for Brown County farmground. This matches the sale prices for the best sales at the Brown County auction, Tracts 6 and 7, which each sold for $3,100 per acre. Other farmground, which sold for lesser prices, was of lesser quality. All in all, the farmground brought fair market values in line with, or exceeding, comparable sales.

12. Waldo Realty has substantial experience selling agricultural real estate. Waldo Realty sold bankruptcy estate property in the bankruptcy case of Gary and Joyce Burival, and that sale exceeded the expectations of all parties. Waldo Realty sold separate property, in Holt County, of Korley and AFY, Inc., the sale of which was previously approved by the bankruptcy court. The Holt County property sold for record prices for the area, and the sale was the subject of numerous articles in newspapers in the state. Korley stated to all in attendance at the Brown

County auction, in his speech prior to the sale, that Waldo Realty did an excellent job selling the Holt County property. The Brown County Property was sold in nearly an identical manner to these two recent, previous auction sales.

13. Waldo Realty is entitled to a commission of 1.5% for the sale of the Property, which is more than $150,000.00. Waldo Realty is entitled to at least an additional $60,000.00 in advertising, marketing expenses, and attorney expenses associated with the sale of the Property.

14. I feel that the actions of Robert, Korley, and AFY, Inc., in not honoring its agreement with Waldo Realty, are inappropriate for numerous reasons, including but not limited to the following:

14.1. The Brown County Sale involved the efforts of approximately 10 individuals associated with Waldo Realty, was the highest priority at Waldo Realty for approximately two months, and continues to consume a large amount of time for myself and Waldo Realty since the sale.

14.2 Robert and Korley had filed for bankruptcy prior to the Brown County sale. We inquired of Robert and Korley's attorney, Jerry Strasheim, as to whether the auction sale would take place, and were directed to proceed with the sale. If reorganization of AFY, Inc. was contemplated, Waldo Realty should not have been directed to incur substantial additional expense, to sell the Property in a commercially reasonable manner, for a fair price, only to have the sellers breach the sales.

14.3. Robert, Korley, and AFY, Inc. did not notify Waldo Realty that it did not intend to honor the Brown County sale contracts until nearly six weeks after the sale, after much more time, attorney's fees, and other expenses were incurred.

15. I am aware that several of the buyers are considering pursuing the sellers for damages related to the purchase agreements. It is my experienced opinion that many of the

buyers of farmground will have already purchased fertilizer, seed, and other inputs in anticipation of farming the Property.

16. I am aware of the consensus in Brown County that operation of the feedlot at the earliest possible time is in the best interests of the community of Ainsworth and Brown County. Many members of the community are adamant that each day that the feedlot remains closed has a huge effect on the entire economy in this area. If the sale, to the highest bidder at the Brown County auction, is completed, then the feedlot will almost certainly open for business soon. If the sale is not consummated, the feedlot is likely to be used minimally, if at all.

I declare, under penalty of perjury, that the foregoing is true and correct.

FURTHER DECLARANT SAYETH NOT.

_____
Pat Chohon