IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AFY, INC., f/k/a Ainsworth Feed Yards Company, Inc.<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>) | CASE NO. 10-40875<br><br>Chapter 11 |

### AFFIDAVIT IN SUPPORT OF MOTION TO ASSUME CONTRACTS AND SELL PROPERTY OF THE DEBTOR (FILING #97)

STATE OF NEBRASKA    )
                     ) ss.
COUNTY OF LANCASTER  )

JOSEPH H. BADAMI, being first duly sworn, deposes and states as follows:

1. I am of legal age and competent to give this affidavit.

2. I am a licensed attorney that is licensed to practice in the State of Nebraska. Additionally, I am a Chapter 7 Trustee for the State of Nebraska. On May 6, 2010, I was appointed the Chapter 11 Trustee of the Debtor's estate (Filing #90).

3. As part of my efforts as Trustee, I caused to be filed the motion to assume executory contracts for sale of real estate ("Auction Property") and to sell real estate of the Debtor and for payment of proceeds from the sale (Filing #97).

4. Since I was appointed Trustee, I have been evaluating the assets of the Debtor and the potential options that may be used to maximize the value of the Debtor's estate and the ability of the Debtor to reorganize the business of the Debtor.

5. In addition to reviewing the court record in this proceeding, my attorneys or myself have had discussions with the counsel for the parties that have been active in this proceeding. Based upon these discussions and a review of the information provided by the

Debtor and other parties, I believe it is in the best interest of the estate to complete the sale of Auction Property that was started by the Debtor with an auction that occurred on February 9, 2010 ("Auction").

6. Currently, the Debtor has no cash and no prospects that cash will be reasonably available to the Debtor to make payments to secured creditors and other creditors.

7. The two largest secured creditors, Commercial National Bank (Schedule D $676,414.00) and Farm Credit Services (Schedule D $9,709,947.00) have informed me that they are not willing to provide additional funding to the Debtor and they believe that the Auction Property should be sold.

8. My attorney, the closing company or I have contacted all of the buyers from the Auction and I believe that all buyers are ready, able and willing to close the real estate sale contracts. It is also my belief that all of the purchasers have planned to use the available crop land that was sold for growing crops this season.

9. I or my attorney has discussed the Auction process with purchasers, secured creditors, and the auction company, Waldo Realty. Additionally, I have reviewed the declaration filed by Pat Chohon. Based upon this information and discussions I believe the Auction process was conducted without collusion, in good faith, and from arm's length bargaining positions. I have no basis to believe that the amounts bid at the auction would be any different or materially higher if a new auction or sale process was undertaken.

10. Based upon my experience as a Trustee in Nebraska, I believe that time is of the essence in this matter because the time period for planting crops is now and the window for this planting time period will close in the near future. Generally, I believe this time period is from today until approximately May 20, 2010. If the Auction purchase contracts are not closed in

time for planting, I believe that there may be purchasers who either will not close the Auction purchase agreements or would be damaged by a delay.

11. I have engaged in discussions with the Debtor's attorney about a transaction with Mr. Boettcher. I have no reasonable basis to believe that this potential transaction for "combination" of the operations would ultimately provide more value for the estate. Additionally, although Mr. Boettcher has made an "informal commitment" to the Debtor (Filing #107 at paragraph 4), I have not received any documents or information that would demonstrate a binding offer. Additionally, I have had discussions with counsel for Farm Credit Services and have been told that the potential immediate rental amount that may be paid would not provide enough funds to adequately protect the secured creditors.

12. Further, the outline of assets that appears in paragraph 10 of the Debtor's objection (Filing #104) includes funds from assets that have previously closed or are asserted by the Debtor's attorney to not be part of the estate. For example, although I will continue to investigate the ownership, I have been informed by the Debtor's attorney the corn is not owned by the Debtor.

13. Based upon the information in my possession, I believe that the best decision for the estate is to complete the sale process started at the Auction.

Dated: May 14, 2010.

_____
Joseph H. Badami

SUBSCRIBED AND SWORN TO before me this 14th day of May, 2010.

GENERAL NOTARY-State of Nebraska
IRENE JANET LECHNER
My Comm. Exp. June 1, 2012

_____
Notary Public

3