IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-40875-TLS |
| | ) | |
| AFY, INC., | ) | CH. 7 |
| | ) | |
| Debtor. | ) | |

## ORDER

Trial was held in North Platte, Nebraska, on April 12, 2012, on the following claim objections:

1.  Trustee's objection to claim No. 31 of Myrtle Sears (Fil. #391) and a resistance by Myrtle Sears (Fil. #481).

2.  Trustee's objection to claim No. 27 of Northern Plains Feeders, Inc. (Fil. #467) and a resistance by Northern Plains Feeders, Inc. (Fil. #486).

3.  Trustee's objection to claim No. 28 of DK Cattle, Inc. (Fil. #468) and a resistance by DK Cattle, Inc. and stockholder Korley Sears (Fil. #487).

4.  Trustee's objection to claim No. 29 of Dakota-Nebraska Feeders, Inc. (Fil. #469) and a resistance by Dakota-Nebraska Feeders, Inc. (Fil. #488).

Jerrold L. Strasheim appeared for Myrtle Sears, Northern Plains Feeders, DK Cattle, Inc., Korley Sears, and Dakota Feeders, Inc. Joseph H. Badami appeared as the Chapter 7 trustee and James A. Overcash appeared on behalf of the trustee. The parties were given the opportunity to file post-trial briefs and this matter is now ripe for decision. This is a core proceeding and this Order contains findings of fact and conclusions of law.

*Background*

Debtor, AFY, Inc. (for ease of reference, "AFY"), commenced its Chapter 11 bankruptcy case on March 25, 2010. At the time, AFY was represented by attorney Jerrold L. Strasheim. Previously, Mr. Strasheim filed Chapter 11 cases as the attorney for Korley Sears (Case No. BK10-40277-TLS) and Robert Sears (Case No. BK10-40275-TLS). Disputes arose herein and in the cases of Robert and Korley Sears as to who actually owned and/or controlled the voting rights of the shares of stock in AFY. The disputes were between Robert and Korley Sears on one hand and other members of the Sears family on the other hand. Partly due to this dispute over the ownership and control of AFY, on April 29, 2010, this court granted a motion to appoint a Chapter 11 trustee (Fil. #81). Joseph H. Badami was subsequently appointed as the Chapter 11 trustee (Fil. #90).

After inquiry by this court regarding potential conflicts of interest in representing Robert and Korley Sears individually, as well as AFY, Mr. Strasheim filed a motion to withdraw as attorney for

AFY (Fil. #119). On June 11, 2010, Mr. Strasheim's motion to withdraw was granted (Fil. #160). On September 2, 2010, this court granted the trustee's uncontested motion to convert the case to Chapter 7 (Fil. #243). Mr. Badami has continued as the Chapter 7 trustee.

The trustee initially objected to the unfiled "claims" of Myrtle Sears, Dakota-Nebraska Feeders, Inc., Northern Plains Feeders, Inc., and DK Cattle, Inc. as listed in AFY's original schedules. Subsequently, Mr. Strasheim filed proofs of claim on behalf of those entities asserting a specific amount of debt owed by AFY. The trustee then objected to each of the proofs of claim as lacking supporting documentation.[1] In the joint preliminary pretrial statements (which set forth the issues for trial and are binding on the parties) the trustee asserted for each claim objection that AFY was not indebted to the claimant, that the claim was not supported by appropriate evidence, and that it was not filed in accordance with the requirements of the Bankruptcy Code and Rules.

*Discussion*

As a preliminary matter, at the commencement of the trial the parties addressed the question of whether the proofs of claim at issue were entitled to the evidentiary effect of Bankruptcy Rule 3001(f), which provides as follows: "Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

The trustee submitted a brief on this issue by the deadline established in the court's scheduling order. Mr. Strasheim failed to submit a pretrial brief. For each of the claims at issue, Mr. Strasheim inserted a dollar amount in paragraph 1 and as the basis for the claim in paragraph 2 merely indicated it was "money loaned." No further explanation was provided and no documents were attached.[2] Each claim was signed only by Mr. Strasheim and without any evidence of his relationship to the claimant, capacity, or authorization to do so.[3]

---

[1] The trustee also objected on the grounds that the trustee has previously objected to the claims as scheduled, before proofs of claim were filed, and that the court granted those objections. However, proofs of claim were subsequently filed and the court vacated its earlier orders granting the objections.

[2] With regard to the claim for DK Cattle, Inc., the basis for the claim was identified as "money advanced; Gifford's records."

[3] One week prior to trial, without obtaining court authority to do so, Mr. Strasheim amended each of the proofs of claim, which amendments simply used a more current proof of claim form and identified Mr. Strasheim as an attorney and as the claimant's "authorized agent." In any event, the trustee asserted that he has the same objections to these amended claims and that the trial could proceed with respect to both the claims as filed and the improperly filed amended claims.

Each of the claimants is owned, in whole or in part, by Robert or Korley Sears, who also own the shares of AFY. Therefore, each claimant is an "insider" of AFY as defined in 11 U.S.C. § 101(31). Claims asserted by insiders demand close scrutiny. *In re Gridley,* 149 B.R. 128, 133 (Bankr. D.S.D. 1992); *Burtch v. Huston (In re USDigital, Inc.),* 443 B.R. 22, 50 (Bankr. D. Del. 2011) (*citing In re Mid-Am. Waste Sys., Inc.,* 284 B.R. 53, 69 (Bankr. D. Del. 2002)). Bankruptcy Rule 3001(a) requires that a proof of claim be a written statement that conforms substantially with the "Official Form," which is Official Form 10. That form requires claimants to attach copies of supporting documents or to explain any failure to attach documents. The claims filed by Mr. Strasheim failed to attach any supporting documentation or any explanation for such failure. If a creditor fails to attach sufficient evidence to establish the validity of its claim, the burden remains with the creditor to prove the validity and amount of its claim. *Bryant v. HSBC Mortgage Servs., Inc. (In re Bryant),* 452 B.R. 876, 882 (Bankr. S.D. Ga. 2011). Thus, the claims were not properly filed pursuant to Bankruptcy Rule 3001(a) and are not entitled to the evidentiary effect of Bankruptcy Rule 3001(f). Accordingly, at the commencement of the trial, this court ruled that since the claims are not entitled to prima facie evidence of validity, it is the burden of each claimant to prove the validity and amount of such claim.

    1.    <u>*Objection to Claim of Myrtle Sears.*</u>

The claim that Mr. Strasheim filed for Myrtle Sears is in the amount of $104,667.00. Ms. Sears is the mother of Robert, Ron, and Dane Sears, and is the grandmother of Korley Sears.[4] The first witness to discuss the Myrtle Sears claim was Kyle Gifford, the outside accountant for AFY commencing in 2003. Mr. Gifford prepared income tax returns and financial statements for AFY based upon documents that other Sears family members (Ron or Kelli) provided to him from AFY's internal accounting system. Mr. Gifford relied entirely on the records of AFY for the tax returns and financial statements that he prepared.

The only document received into evidence regarding the Myrtle Sears claim is filing No. 595 (which is the same as filing No. 589). Mr. Gifford testified that he prepared this document based upon information provided to him by AFY. The document shows a "Note Balance 7/31/11" of $100,000.00, and reflects interest payments having been made on an annual basis from July 31, 1997, until July 31, 2009. The document also contains a "**Note**" at the bottom which states,

> Per discussion with Ron, this was money that Myrtle put into the corporation many years ago. 5/5/97? There is no written note agreement, and no principal payments have been made on the note. When Myrtle decides she needs the money back, AFY will pay her. Interest is not accrued on this money, but it is paid annually – in the Spring – at 7%, beginning in 1997.

Robert Sears testified that he was aware of the loan by his mother, Myrtle Sears. He said that "she had the money so she loaned it to the feed yard." The only documentary evidence indicated that

---

[4]Ms. Sears could not appear to testify with respect to her claim due to her age and health.

AFY has for many years treated the obligation owed to Myrtle as a loan, even referencing the obligation as a "Note Balance" in its records. There is no evidence to the contrary and, inexplicably, neither party presented any testimony from Ron Sears, who apparently maintained and prepared the company records with respect to this obligation and would have had personal knowledge of the validity of the claim. Thus, based on the record, Myrtle Sears has a valid unsecured claim for the balance due on a loan and the trustee's objection to her proof of claim is overruled.

2. *Objection to Claim of DK Cattle, Inc.*

The claim Mr. Strasheim filed for DK Cattle, Inc. was in the amount of $101,912.00. Korley Sears testified that he is the sole owner of DK Cattle, Inc. and that he acquired the shares from other Sears family members. He further testified that the company had not conducted any business since he acquired it and that its only asset is its claim against AFY. However, he did not provide any testimony as to any amounts owed by AFY to DK Cattle, Inc. or even when or how the debt arose or how it was to be repaid. The sole purpose of Korley's testimony appeared to be to assert a right, as the sole shareholder, to the claim of DK Cattle, Inc., which is apparently dissolved.

The only other testimony regarding this claim came from Mr. Gifford, the accountant. Again, Mr. Gifford prepared accounting papers based on information he received from Ron Sears rather than from his personal knowledge. Thus, Mr. Gifford has no personal knowledge of any obligation owed by AFY to DK Cattle, Inc. Further, no bank records or any other documentary evidence was introduced to support any debt owed by AFY to DK Cattle, Inc. In his reply brief, Mr. Strasheim even seemed to acknowledge that there is no loan debt owed by AFY to DK Cattle, Inc. and he failed to identify any evidence supporting this claim. Therefore, the trustee's objection is sustained and the proof of claim of DK Cattle, Inc. is denied.

3. *Objections to the Claims of Northern Plains Feeders and Dakota-Nebraska Feeders.*[5]

Northern Plains Feeders and Dakota Feeders have filed claims in the amount of $250,000.00 each. Robert Sears testified that the money was loaned by the claimants to the feed yard to make its borrowing base with Farm Credit look better. Although his testimony was somewhat difficult to comprehend, it appeared the bottom line was that the more money AFY had, the less it had to borrow from Farm Credit. Robert stated that the two feeding companies had the money, so "they loaned it to Ainsworth Feed Yards." Unfortunately, in his testimony Robert was never clear about which entity he was referencing at any given time. Throughout this bankruptcy case, Robert and others have represented that the Debtor, AFY, Inc., was the owner of the property that was known as the Ainsworth Feed Yard. The entity Ainsworth Feed Yards, LLC was the operating entity – it ran the feed yard and was a co-borrower on the Farm Credit debt. At times during his testimony, it seemed Robert (as well as everyone else) failed to distinguish between the two and treated them as one entity.

---

[5]At times, the parties refer to Dakota-Nebraska Feeders, Inc. as Dakota Feeders.

Mr. Gifford testified that the obligations were identified as notes payable from AFY on accounting "work papers" he prepared (see Fil. #587 and #588). Again, he prepared those work papers based on records provided by Ron Sears, who did not testify. Also, at the bottom of his accounting document for Northern Plains Feeders (Fil. #587), he added the following:

> This and Dakota-NE (total $500,000) was a result of the need for Bob to make an additional capital contribution to satisfy FCS. Bob owes the below entities, and the money went into AFY, LLC.
>
> Currently shown on AFY, Inc.'s TB as N/P - Dakota/Northern, but it is Bob's subordinated debt.

The corresponding document for Dakota-Nebraska Feeders (Fil. #588) has similar language. Mr. Gifford testified that it was his understanding that "Bob" (presumably Robert Sears) actually borrowed the money from the two claimants and that the money ultimately was delivered to the LLC (presumably Ainsworth Feed Yards, LLC, not the Debtor). Robert denies borrowing the money from the claimants and also denies that the money was a capital contribution. Clearly, the documents are ambiguous as the obligations cannot be both debt and capital contributions at the same time. Further, it is unclear how or if the money actually moved from the claimants to AFY, to (possibly) AFY, LLC, or what is meant by "Bob's subordinated debt." Mr. Gifford was not able to explain those ambiguities with any personal knowledge and no testimony was presented from anyone with personal knowledge of the preparation of AFY's internal accounting records. Further, no bank records, canceled checks, or any other documents were introduced to support the transactions.[6]

Thus, the only evidence supporting this claim is Robert's testimony that the claimants "loaned" the money to AFY and the accounting work papers indicating the obligations may have been treated as a note payable to the claimants. However, the accounting work papers also have specific language indicating the money was a capital contribution required by a lender. They further indicate AFY did not even receive the money; rather it went to "AFY, LLC" and was "Bob's subordinated debt." Interestingly, in the list of 20 largest unsecured creditors (Fil. #3), the claims of Northern Plains Feeders and Dakota-Nebraska Feeders are listed and the nature of the claim is stated to be "Trade With Related Party." Mr. Strasheim prepared that document (presumably with the assistance of Robert) when he was the attorney for AFY. Notably, the description does not indicate anything about a loan. In any event, the ultimate burden of persuasion is on the claimants to establish their entitlement to the claims. *Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004). The claimants have failed to meet that burden

---

[6]Mr. Strasheim did attempt to introduce certain "general ledger" documents (Fil. #596, #603, and #604) but the trustee's objections to admissibility based on foundation and hearsay were sustained and the documents were not received into evidence.

of persuasion as to the validity and amount of their claims.[7] Therefore, the trustee's objection is sustained.

THEREFORE, IT IS ORDERED:

1. Trustee's objection to claim No. 31 of Myrtle Sears (Fil. #391) is overruled and her claim is allowed;

2. Trustee's objection to claim No. 28 of DK Cattle, Inc. (Fil. #468) is sustained and the claim is disallowed; and

3. Trustee's objection to claim No. 27 of Northern Plains Feeders, Inc. (Fil. #467) and trustee's objection to claim No. 29 of Dakota-Nebraska Feeders, Inc. (Fil. #469) are sustained and the claims are disallowed.

DATED: June 6, 2012.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Jerrold L. Strasheim
    *Joseph H. Badami/James A. Overcash
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[7] In his closing and reply briefs, Mr. Strasheim expended considerable effort advancing the proposition that the trustee must commence an adversary proceeding to reclassify debt to equity. However correct that proposition may be, it is irrelevant to the task at hand – persuading this court regarding the validity and amount of the claims.